Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4087 | **DATE** | 1/10/2003 |
| **CASE TITLE** | STONE BROTHERS & ASSOCIATES . vs. KMART CORPORATION | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. The order of the Bankruptcy Court granting Kmart's motion for order pursuant to 11 U.S.C. 365(d)(4) extending the deadline to assume or reject unexpired leases of nonresidential real property is not appealable; and, therefore, these appeals are dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JAN 1 3 2003 | |
| | Notified counsel by telephone. | date docketed | 10 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
JAN 1 3 2003

| | |
|---|---|
| KEY PLAZA I, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 02 C 4086 |
| v. ) | |
| ) | Hon. John W. Darrah |
| ) | |
| KMART CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| STONE BROTHERS & ASSOCIATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 02 C 4087 |
| v. ) | |
| ) | |
| KMART CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the appeal of an order of the bankruptcy court on April 24, 2002, by Stone Brothers and Associates ("Stone Brothers") and Key Plaza I ("Key Plaza"). For the reasons that follow, these appeals are dismissed.

### BACKGROUND

On January 22, 2002, Kmart Corporation ("Kmart") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code. On February 14, 2002, Kmart filed a Motion for Order Pursuant to 11 U.S.C. § 365(d)(4) Extending the Deadline to Assume or Reject Unexpired Leases of Nonresidential Real Property ("the Extension Motion"). About 120 landlords objected to the

-1-

10

Extension Motion.

Stone Brothers owns and operates a shopping center in Stockton, California, where Kmart has been a lessee since 1968. Key Plaza is the lessor for a shopping center in Key West, Florida, where Kmart has been a tenant since 1983. Both Kmart stores at these locations are still in operation.

On April 24, 2002, a final hearing was held as to the three remaining objecting landlords, including Stone Brothers and Key Plaza. An extensive hearing was held, covering more than ninety pages of transcript. Kmart presented three witnesses: Ron Hutchinson ("Hutchinson"), Kmart's chief restructuring officer; Michael Deighan ("Deighan"), a principal of a real estate investment banking firm that is advising Kmart; and John Foster ("Foster"), Kmart's senior vice-president of real estate management. The witnesses testified that an extension of the Lease Assumption or Rejection Deadline was necessary to an intelligent decision-making process with respect to the disposition of Kmart's leasehold interests. The witnesses testified that Kmart needed to examine its operations and make overall strategic decisions on where to concentrate its future business efforts. The witnesses further testified that, in order to do this, Kmart needed to evaluate the results of the 2002 holiday season and, therefore, needed an extension until March 31, 2003.

Hutchinson testified that Kmart had over 2,100 stores and a large number of unexpired leases. Hutchinson also testified that fifty-five percent of Kmart's revenues are earned during the holiday shopping season and that such figures were necessary to evaluating whether to accept or reject the lease. Foster testified that Kmart had sufficient funds to perform its financial obligations.

While Stone Brothers and Key Plaza cross-examined Kmart's witnesses, they did not present any evidence or witnesses.

After oral argument by the parties, the bankruptcy court made the following findings.

> Kmart is the nation's second largest discount retailer. Kmart has approximately 240,000 employees. Kmart currently operates approximately 2,100 stores throughout the United States, Puerto Rico, the U.S. Virgin Islands, and Guam. Kmart reported that at the petition date it had approximately 17 billion in assets, and over $10 billion in liability. Kmart reported annual sales of approximately $37 billion. Clearly, this is a very large and complex case.

(Tr. at 107 ll. 2-11.) The bankruptcy court found that Kmart, through a financial matrix analysis, identified the leases that were a cash drain on the company and required immediate action and closed approximately 280 stores. (Tr. at 107 ll. 18-25.) The bankruptcy court found that:

> The evidence indicates that the leases that survived the first cut were not identified as being stores that needed to be closed, will not be considered on a lease-by-lease basis but together as a package in conjunction with Kmart's formulation of an overall strategic business plan. A crucial component of the plan involves the results of the upcoming holiday season. Holiday results are a key performance indicator of formulating a strategic plan. It is an incorrect characterization of the evidence to say that the leases of these three particular landlords were not reviewed. The evidence indicates that these leases survived the first cut[;] and were not identified as leases on stores which required closing. The landlords have not shown a particular prejudice to them that outweighs the reasons to grant the extension. The evidence demonstrates that Kmart can meet the post-petition obligations during the extended period.

(Tr. at 108 ll. 5-25.)

The bankruptcy court further found that:

> the landlords still retain the right to request a shortening of a deadline for cause based on their particular circumstances. . . . Kmart has also demonstrated that the March 31[], 2003 date is not an arbitrary date for the extension. Rather, the date was selected because it will allow Kmart to review the holiday season results and the performance of stores during that season. The Court agrees with the rationale of the date and approves it as the date by which Kmart must decide to assume or reject non-residential real property leases.

(Tr. at 109 ll. 1-15.) The bankruptcy court's ruling also provided that Kmart had a right to seek further extensions.

-3-

Stone Brothers and Key Plaza then appealed the bankruptcy court's ruling to this Court, raising the following issues for review:

> 1. Did [Kmart] meet its burden of establishing cause pursuant to 11 U.S.C. § 365(d)(4) to merit the [b]ankruptcy [c]ourt's [one-year] extension of the deadline to assume or reject its nonresidential real property leases with [Stone Brothers and Key Plaza] from March 25, 2002 to March 31, 2003?
> 2. Does 11 U.S.C. § 365(d)(4) require [Kmart] to establish "cause" . . . as to each of its leases with [Stone Brothers and Key Plaza]?
> 3. Did the [b]ankruptcy [c]ourt err by extending [Kmart's] time to assume or reject [Stone Brothers' and Key Plaza's] leases for one year?
> 4. Did the Bankruptcy Court improperly shift the burden to [Stone Brothers and Key Plaza] to prove why [Kmart] is not entitled to the extension?

(Appellants' Joint Opening Br. at 2.)

## LEGAL STANDARD

Evidentiary rulings regarding the admissibility of evidence are reviewed only for an abuse of discretion. *Aetna Life Ins. Co. v. Wise*, 184 F.3d 660, 665 (7th Cir. 1999). "Under [the abuse of discretion] standard, the relevant inquiry is not how this court would have ruled . . . but[,] instead[,] is 'whether *any* reasonable person could agree with the [bankruptcy] court.'" *Peate v. McCann*, 294 F.3d 879, 884 (7th Cir. 2002) (quoting *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563 (7th Cir. 1984)).

The Court reviews the bankruptcy court's factual determination and application of legal standards to a particular set of facts for clear error, *McFarlane v. Life Ins. Co. of N. Am.*, 999 F.2d 266, 267 (7th Cir. 1993), and mixed questions of law and fact *de novo*. *In re Ratner*, 132 B.R. 728, 730 (N.D. Ill. 1991).

> A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . If the bankruptcy court's account of the evidence is plausible, a reviewing court may not reverse even if it would have

weighed the evidence differently as trier of fact.

*SK-Palladin Partners, L.P. v. Platinum Entm't, Inc.*, No. 01 C 7202, 2001 WL 1593154, at *3 (N.D. Ill. Dec. 13, 2001).

Factual findings, such as the credibility of witnesses, are reviewed for clear error only. *G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 995 (7th Cir. 1989). This standard is expressly set forth in Bankruptcy Rule 8013, which states:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed.R.Bankr.P. 8013.

## **DISCUSSION**

The Court must first determine whether it has jurisdiction over this appeal. Section 158 of Title 28 provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). An order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Carlson v. Brandt*, Nos. 97 C 2165, 96 B 9606, 97 C 3630, 1997 WL 5354500, at *3 (N.D. Ill. Aug. 22, 1997). In bankruptcy proceedings, the reviewing courts look at the finality of an order with a "relaxed eye" and interpret the finality requirement more liberally under § 158 than under 28 U.S.C. § 1291. *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1298 (7th Cir. 1997).

> Even without a formal termination of the case, a bankruptcy court's order is final and appealable if it (1) "resolves all contested issues on the merits and leaves only the distribution of the estate assets to be completed," *In re Wade*, 991 F.2d 402, 406 (7th Cir. 1992) . . . ; (2) "ultimately determine[s] a creditor's position in the bankruptcy

proceeding, even though the administration of the debtor's estate continues," *In re Forty-Eight Insulations*, 115 F.3d [at 1298] . . . ; or (3) "mark[s] the conclusion of what, but for the bankruptcy, would be the equivalent of a stand-alone suit" by or against the trustee. *In re Klein*, 940 F.2d 1075, 1077 (7th Cir. 1991) . . . .

*Carlson*, 1997 WL 534500, at *3.

Based on the above standard, the Extension Order is not a final and appealable order. First, the Extension Order has not resolved all contested issues on the merits and will not lead to a final distribution of assets. The Extension Order has not ultimately determined Stone Brothers' or Key Plaza's positions in the bankruptcy proceeding. The Extension Order does not dispose of the leases but, rather, merely extends the time in which Kmart can decide whether to assume or reject the leases. Finally, the Extension Order does not mark the conclusion of the equivalent of a stand-alone suit. The decision whether to extend a deadline is not the sort of issue that would be the basis of an independent lawsuit against Kmart.

Section 158 also provides district courts with discretion to hear appeals "from other interlocutory orders and decrees." 11 U.S.C. § 158(a)(3). Courts usually use the standards set forth in 28 U.S.C. § 1292(b) in determining whether to exercise their discretion under § 158(a)(3). *Carlson*, 1997 WL 534500, at *6. Section 1292(b) provides for appellate review of orders that are not final when "the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." "Generally speaking, leave to appeal an interlocutory order will not be granted 'absent exceptional circumstances.'" *In re Pullman Construction Indus., Inc.*, 143 B.R. 497, 498 (N.D. Ill. 1992) (quoting *Escondido Mission Village L.P. v. Best Prods. Co.*, 137 B.R. 114, 116 (S.D.N.Y. 1992)).

Stone Brothers and Key Plaza have not identified any substantial ground for difference of opinion in the controlling question of law or any "exceptional circumstances" that would justify an exercise of jurisdiction over the bankruptcy court's interlocutory order. The factors for consideration in determining whether cause for an extension are well established. Courts look at:

> (1) [w]hether the lease is the primary asset of the debtor;
> (2) [w]hether the lessor has a reversionary interest in the building built by the debtor on the landlord's land;
> (3) [w]hether the debtor has had time to intelligently appraise its financial situation and potential value of its assets in terms of the formulation of a plan;
> (4) [w]hether the lessor continues to receive rental payments and whether the debtor fails to pay the rent reserved in the lease;
> (5) [w]hether the lessor will be damaged beyond compensation available under the Bankruptcy Code due to the debtor's continued occupation;
> (6) [w]hether the case is exceptionally complex and involves a large number of leases;
> (7) [w]hether need exists for a judicial determination of whether the lease is a disguised security agreement;
> (8) [w]hether the debtor has failed or is unable to formulate a plan when it has had more than enough time to do so; and
> (9) [a]ny other factors bearing on whether the debtor has had a reasonable amount of time to decide to assume or reject the lease.

*Escondido Mission Village*, 137 B.R. at 117 (quoting *In re Muir Training Tech., Inc.*, 120 B.R. 154, 158-59 (Bankr. S.D. Cal. 1990)); *see, e.g.*, *In re Service Merchandise Co., Inc.*, 256 B.R. 744, 748 (Bankr. M.D. Tenn. 2000); *In re Ernst Home Center, Inc.*, 209 B.R. 974, 980 (Bankr. W.D. Wash. 1997).

The extension is consistent with the factors listed in *Escondido Mission Village*. After the presentation of witnesses and oral argument, the bankruptcy court judge granted the Extension Motion based on the following facts: (1) the case was very large and complex due to the fact that Kmart has 2,100 stores and 240,000 employees, (2) the performance of stores during the holiday season was a crucial component in the formulation of an overall strategic business plan, (3) the

landlords would not be prejudiced by the grant of an extension and could seek a shortening of the period, and (4) the evidence established that Kmart could meet its post-petition obligations during the extension period. (Tr. at 107-109.)

Other bankruptcy courts have granted extensions under similar circumstances without individual consideration of the objecting landlords' leases. *See In re Victoria Station, Inc.*, 875 F.2d 1380, 1385 (9th Cir. 1989) (affirming two extensions of thirteen months in total because "the process is complicated by simultaneous evaluations of dozens of properties"); *In re Service Merchandise Co., Inc.*, 256 B.R. at 749 (noting that "the process of assumption or rejection simply takes a little longer in a case this size with the amount of money at issue and the number of leases to assess" and that "[t]he landlords remain amply protected during this extension by the continued payment of rent and all other post-petition obligations, and their right . . . to seek a shortening of the period for cause"); *In re Ernst Home Ctr., Inc.*, 209 B.R. at 981-83 (granting additional fourteen-month extension to debtor-retail chain with over eighty stores to allow third party to market leases); *In re Musikahn Corp.*, 57 B.R. 942, 944 (Bankr. E.D.N.Y. 1986) (granting extensions of six months in total for debtor to assess the results of the holiday season). Therefore, the Extension Order is not appealable under § 158(a)(3).

## CONCLUSION

Based on the foregoing, the order of the bankruptcy court granting Kmart's Motion for Order Pursuant to 11 U.S.C. § 365(d)(4) Extending the Deadline to Assume or Reject Unexpired Leases of Nonresidential Real Property is not appealable; and, therefore, these appeals are dismissed.

**IT IS SO ORDERED.**

_____
John W. Darrah, Judge
United States District Court

Date: January 10, 2002